**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Zurich American Insurance Company,<br><br>                  Plaintiff,<br><br>v.<br><br>U.S. Specialty Insurance Company, et al.,<br><br>                  Defendants.<br><br>U.S. Specialty Insurance Company,<br><br>                  Counterclaimant,<br><br>v.<br><br>Zurich American Insurance Company,<br><br>                  Counterdefendant. | No. CV-20-01995-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Zurich American Insurance Company's ("Zurich") Motion for Partial Summary Judgment, (Doc. 16), and U.S. Specialty Insurance Company's ("U.S. Specialty") Motion for Summary Judgment, (Doc. 17). For the following reasons, Zurich's motion is denied and U.S. Specialty's motion is granted.[1]

---

[1] The parties requested oral argument. Those requests are denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Invs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

**BACKGROUND**

Car Wash Partners ("CWP") and John Lai are insureds under Zurich and U.S. Specialty's insurance policies. (Doc. 15 ¶ 28.) In 2016, CWP and Mr. Lai were named as defendants in a lawsuit (the "Litigation") by Protect-A-Car Wash Systems, Inc. ("Protect-A-Car"). *Id.* ¶ 25. Protect-A-Car alleged trademark infringement, false association, unfair competition, and cybersquatting under the Lanham Act and Maryland common law. *Id.* ¶ 26. Specifically, Protect-A-Car asserted that CWP and Mr. Lai violated its rights in its service marks. *Id.*

CWP provided notice of the Litigation to U.S. Specialty and Zurich. *Id.* ¶¶ 29, 31. U.S. Specialty accepted coverage only for Mr. Lai, subject to a complete reservation of rights. *Id.* ¶ 30. Zurich initially denied CWP and Mr. Lai coverage but, after CWP sent a letter to Zurich asking for reconsideration, Zurich agreed to participate in the Litigation, subject to a reservation of rights. *Id.* ¶¶ 32, 35–36. In 2017, CWP and Mr. Lai were granted summary judgment on Protect-A-Car's claims. *Id.* ¶ 43. In total, Zurich paid $823,461.00 and U.S. Specialty paid $117,858.51 in defense fees and costs. *Id.* ¶ 47.

On May 6, 2020, Zurich filed suit in Maricopa County Superior Court, alleging that U.S. Specialty, and Defendant Lloyd's Syndicate, who has since been terminated as a defendant, had not paid their equitable share of defense expenses incurred in the Litigation. (Doc. 1-1.) U.S. Specialty filed a Counterclaim against Zurich, asserting that Zurich is liable for and must reimburse U.S. Specialty for the $117,858.81 paid in defense costs and fees. (Doc. 1-3.) U.S. Specialty removed the case to this Court on October 15, 2020. (Doc. 1.)

Zurich now moves for partial summary judgment on its equitable contribution and subrogation claims and its claim for declaratory relief, which requests that the Court declare that U.S. Specialty's policy is not excess to the coverage available under any other insurance policy. U.S. Specialty also moves for summary judgment on its Counterclaim.

**DISCUSSION**

**I.     Legal Standard**

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[ ] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact[.]" *Keenan v. Allan*, 91 F.3d 132 1275, 1279 (9th Cir. 1996).

**II.    Analysis**

Under Arizona law, interpretation of an insurance contract is a question of law. *Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (1982). The purpose of contract interpretation is to determine and enforce the parties' intent. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152, 854 P.2d 1134, 1138 (1993). Provisions of an insurance contract are construed according to their plain and ordinary meaning from the standpoint of an "average layman who is untrained in the law or the field of insurance." *Liristis v. Am. Fam. Mut. Ins. Co.*, 204 Ariz. 140, 143–44, 61 P.3d 22, 25-26 (Ct. App. 2002). "If an insurer desires to limit its liability under a policy, it should employ

language which clearly and distinctly communicates to the insured the nature of the limitation." *Coconino Cnty. v. Fund Adm'rs. Ass'n, Inc.*, 149 Ariz. 427, 431, 719 P.2d 693, 697 (Ct. App. 1986).

The parties do not dispute that U.S. Specialty's policy covered the claims against Mr. Lai, but not CWP. The parties do dispute, however, whether Zurich's policy excludes coverage as to CWP and Mr. Lai. Zurich's policy covers "personal and advertising injury," subject to certain exclusions. (Doc. 15 ¶ 3.) Zurich's definition of personal and advertising injury includes "[t]he use of another's advertising idea in your 'advertisement.'" *Id.* ¶ 4. The following exclusions are relevant here:

> i. Infringement of Copyright, Patent, Trademark Or Trade Secret
>
> "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."
> However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.
>
> . . .
>
> 1. Unauthorized Use of Another's Name or Product
>
> "Personal and advertising injury" arising out of the unauthorized use of another's name or product in your email address, domain name, or metatag, or any other similar tactics to mislead another's potential customers.

*Id.* ¶¶ 6–7.

"A liability insurer's duty to defend generally arises [i]f the complaint in the action . . . upon its face alleges facts which come within the coverage of the liability policy." *Quihuis v. State Farm Mut. Auto. Ins. Co.*, 235 Ariz. 536, 544, 334 P.3d 719, 727 (2014) (internal quotations and citation omitted). The complaint in the Litigation alleges that "[t]his action arises from Defendants' use and proposed continued use of the *service mark* MISTER CAR WASH . . . in commerce in connection with the sale, offering for sale, and advertising of car wash services . . . in violation of Plaintiff's rights in its own *service marks*." (Doc. 15-4 ¶ 2) (emphasis added).

Zurich's policy, read plainly, does not exclude the claims alleged against CWP and Mr. Lai. Although personal and advertising injury arising out of the infringement of trademarks is excluded, the policy does not state that infringement of service marks is excluded. *See Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1194 n.1 (9th Cir. 2009) (explaining the difference between a service mark and a trademark). As the Litigation involved the Defendants' alleged infringement of Protect-A-Car's service marks in its advertisements, the provision stating that "such other intellectual property rights do not include the use of another's advertising idea in your 'advertisement'" is applicable. Furthermore, the provision excluding unauthorized use of another's name or product does not clearly apply. For its cybersquatting claim, Protect-A-Car took issue with CWP and Mr. Lai's use of the domain name "mistercarwash.com." (Doc. 15-4 ¶ 97.)

The question remaining is whether U.S. Specialty's "other insurance" provision governs. "Other insurance" clauses "seek to limit or eliminate coverage under the policy in the event the insured has other insurance available." *Regal Homes, Inc. v. CNA Ins.*, 217 Ariz. 159, 167, 171 P.3d 610, 618 (Ct. App. 2007) (internal quotations and citation omitted). "When competing insurance policies both contain 'other insurance' clauses that apply to the same claim, a court must determine which clause, if any, will be given effect over the other. If the clauses do not conflict, the court should apply the clauses as written." *Admiral Ins. Co. v. Cmty. Ins. Grp. SPC Ltd.*, No. CV-14-08152-PCT-DGC, 2016 WL 6873345, at *4 (D. Ariz. Nov. 22, 2016) (internal citation omitted).

U.S. Specialty's policy states that "[s]uch insurance as is provided by this Policy will apply only as excess over and will not contribute with any other valid and collectible insurance." (Doc. 15 ¶ 23.) Zurich's policy provides that its insurance is primary except in certain situations where it is excess. *Id.* ¶ 9. When the insurance is excess, the policy provides that Zurich has no duty to defend the insured against any suit if another insurer has a duty to defend the insured against that suit. *Id.* Neither party asserts that the situations triggering excess insurance in the Zurich policy applies. As U.S. Specialty's policy provides excess coverage and Zurich's policy provides primary coverage in this instance,

the "other insurance" provisions do not conflict. U.S. Specialty's "other insurance" provision therefore governs because U.S. Specialty and Zurich's policies, as explained above, are both triggered by the claims asserted against Mr. Lai.

Primary insurance must be exhausted before an excess insurer is obligated to pay. *Am. Fam. Mut. Ins. Co. v. Cont'l Cas. Co.*, 200 Ariz. 119, 121, 23 P.3d 664, 666 (Ct. App. 2001). Here, Zurich's policy provides a "personal and advertising injury limit" of 1 million for "[a]ny one person or organization," (Doc. 15 ¶ 2), and Zurich paid a total of $823,461.00 in defense fees and costs. As Zurich's primary coverage was not exhausted, U.S. Specialty is not liable for defense costs.

Equitable subrogation is a doctrine that is intended "to compel the ultimate payment of a debt by one who in justice and good conscience ought to pay it and to prevent a windfall at the expense of another." *Sourcecorp., Inc. v. Norcutt*, 227 Ariz. 463, 467, 258 P.3d 281, 285 (Ct. App. 2011) (internal quotations and citation omitted). The doctrine is broad enough "to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." *Id.* As Zurich's coverage was triggered by the Litigation, and U.S. Specialty's was not due to its "other insurance" clause, U.S. Specialty is entitled to reimbursement of the $117,858.51 expended in defense costs and fees from Zurich.

## CONCLUSION

For the reasons provided above, U.S. Specialty is not liable for defense costs in the Litigation because its "other insurance" provision applies. Therefore, Zurich's request for a share of defense fees is denied and U.S. Specialty is entitled to reimbursement of $117,858.51 from Zurich.

Accordingly,

**IT IS THEREFORE ORDERED** that Zurich American Insurance Company's Motion and Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment (Doc. 16) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant U.S. Specialty Insurance Company's Motion for Summary Judgment (Doc. 17) is **GRANTED.**

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment for U.S. Specialty on its Counterclaim in the amount of $117,858.51.

**IT IS FURTHER ORDERED** that U.S. Specialty may file a motion for award of attorney's fees pursuant to A.R.S. § 12-341.01 no later than fourteen (14) days from the date of this Order.

Dated this 30th day of July, 2021.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge